## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

AMERICAN SOUTHERN HOME      )
INSURANCE COMPANY,          )
                                   )     Case No. 2:23-cv-902
               Plaintiff,       )
v.                                 )
                                     )
CECIL A. MORRISON IV, HOCKING    )
TECHNICAL COLLEGE, and the ESTATE   )
of MICHAEL D. WHITMER by and through   )
Chelsea O'Brien, administrator,       )
                                     )
               Defendants.     )

## COMPLAINT FOR DECLARATORY JUDGMENT

The American Southern Home Insurance Company ("American Southern Home") for its Complaint for Declaratory Judgment against Hocking Technical College (the "College") and Cecil A. Morrison IV ("Morrison") states as follow:

### NATURE OF THE ACTION

1.      This is an insurance coverage dispute arising out of a personal injury lawsuit filed by the Estate of Michael D. Whitmer against Morrison (the "Underlying Lawsuit"). The Underlying Lawsuit alleges Morrison, a police officer, fatally shot and killed Whitmer when he refused to exit his vehicle in response to Morrison's commands.

2.      American Southern Home issued liability insurance to Hocking College that provides Law Enforcement coverage. American Southern Home's Law Enforcement coverage is limited to law enforcement being provided for Hocking College. The Policies do not cover law enforcement being provided for other government entities.

3.      Morrison was providing law enforcement for the City of Nelsonville when he shot Whitmer. Therefore, the American Southern Home policies do not afford coverage for the Underlying Lawsuit.

4.      American Southern Home brings this lawsuit to obtain a declaration that it has no obligation to defend Morrison in the Underlying Lawsuit or indemnify Morrison or the College as respects the Underlying Lawsuit.

## THE PARTIES

5.      American Southern Home is an insurance company incorporated under the laws of the State of Florida, with its principal place of business in Atlanta, Georgia.

6.      Upon information and belief, the College is an entity organized under the laws of Ohio and has its principle place of business in Nelsonville, Ohio.

7.      Upon information and belief, Morrison is a citizen of the state of Ohio and resides in a county within the boundaries of the U.S. District Court for the Southern District of Ohio.

8.      Upon information and belief, the Estate of Michael D. Whitmer is an entity organized under Ohio law.  Upon information and belief, Chelsea O'Brien, as the Administrator of the Estate, is a citizen of the state of Ohio and resides in a county within the boundaries of the U.S. District Court for the Southern District of Ohio.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this lawsuit under 28 U.S.C. § 2201 because it presents an actual controversy seeking a declaration of rights regarding American Southern Home's duties and obligations under its insurance policy to defend and indemnify Morrison and indemnify the College in the Underlying Lawsuit.

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as the plaintiff and defendants are citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the request for insurance coverage occurred in this district.

## FACTUAL BACKGROUND

**The Underlying Lawsuit**

12. The Underlying Lawsuit is pending in the United States District Court for the Southern District of Ohio, Eastern Division, captioned as *Estate of Michael D. Whitmer by and through Chelsea O'Brien, Administrator of said Estate v. Cecil A. Morrison, IV*, case number 2:22-cv-02805-JLG-CMV. A copy of the Complaint in the Underlying Lawsuit is attached as Exhibit 1. The Underlying Lawsuit alleges the following.

13. Morrison was a police officer employed by the Hocking College Police Department. (Ex. 1, ¶ 5.)

14. At all times relevant to the Underlying Lawsuit, Morrison was acting on behalf of the City of Nelsonville pursuant to a mutual aid agreement between the College and the City of Nelsonville. (Ex. 1, ¶ 6.)

15. On July 27, 2021, Morrison was dispatched to Whitmer's residence on a report of raised voices coming from his apartment. (Ex. 1, ¶ 14.)

16. When Morrison arrived on scene, Whitmer was seated in the driver's side of his vehicle preparing to leave his residence. (Ex. 1, ¶ 14.)

17. Morrison and fellow officers commanded Whitmer to exit his vehicle. (Ex. 1, ¶ 15.)

18.    Whitmer ignored these commands and attempted to back his vehicle out of his driveway. (Ex. 1, ¶ 28.)

19.    After multiple commands for Whitmer to stop and exit the vehicle, Morrison fired his firearm into Whitmer's vehicle fatally striking him. (Ex. 1, ¶ 39-41.)

20.    The Underlying Lawsuit asserts the following causes of action against Morrison:

- Count I – 42 U.S.C. § 1983 Wrongful Death

- Count II – 42 U.S.C. § 1983 Survival Action

- Count III – Assault and Battery Wrongful Death

- Count IV – Assault and Battery Survival Action

**THE AMERICAN SOUTHERN HOME POLICIES**

21.    American Southern Home issued policy number 7NA6CP0000077-00 to the College for the policy period of February 20, 2021 to February 20, 2022 (the "21-22 Primary Policy"). The 21-22 Primary Policy provides several coverages, including General Liability coverage and Ohio Law Enforcement Liability coverage ("Law Enforcement coverage"). The 21-22 Primary Policy is attached as Exhibit 2.

22.    American Southern Home issued policy number 7NA6CP0000077-01 to the College for the policy period of February 20, 2022 to February 20, 2023 (the "22-23 Primary Policy"). The 22-23 Primary Policy provides several coverages, including General Liability coverage and Ohio Law Enforcement Liability coverage ("Law Enforcement coverage"). The 22-23 Policy is attached as Exhibit 3. The 21-22 Primary Policy and the 22-23 Primary Policy are collectively referred to as the "Primary Policies."

23.    The limits of insurance for General Liability coverage in the Primary Policies are $1 million each occurrence and $3 million in the aggregate.

24. The limits of insurance for the Law Enforcement coverage in the Primary Policies are $1 million each "wrongful act" and $3 million in the aggregate. The Law Enforcement Coverage is subject to a $2,500 Deductible that applies per "claim." The Law Enforcement Coverage is subject to a Retroactive Date of February 20, 2016.

25. American Southern Home also issued consecutive commercial excess liability policies to the College under number 7NA6FF0000006-00, effective February 20, 2021 to February 20, 2022, (the "21-22 Excess Policy") and number 7NA6FF0000006-01, effective February 20, 2022 to February 20, 2023 (the "22-23 Excess Policy") (collectively, the "Excess Policies"). The Excess Policies are attached as Exhibit 4. Hereafter, the Primary Policies and the Excess Policies will be referred to collectively as the "Policies."

26. The Primary Policies' General Liability coverage applies, in relevant part, to "bodily injury" during the policy period. The "Bodily Injury and Property Damage Liability" insuring agreement in the General Liability coverage provides:

**1.    Insuring Agreement**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

*** 

b.    This insurance applies to "bodily injury" or "property damage" only if:

*** 

(2)    The "bodily injury" or "property damage" occurs during the policy period;

\*\*\*

27.     The Primary Policies' Law Enforcement coverage applies, in relevant part, to "injury" arising out of a "wrongful act," provided a "claim" for the "injury" is first made during the policy period.  The Law Enforcement coverage insuring agreement provides:

**1.      Insuring Agreement**

    **a.**     We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "injury" arising out of a "wrongful act" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking "damages" because of a "wrongful act" to which this insurance applies. However, we will have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply.

                \*\*\*

    **c.**     This insurance applies to "wrongful acts" that are committed:

       (1)     In the "coverage territory"; and

       (2)     During the policy period, if a "claim" is first made against any insured during the policy period or Extended Reporting Period, if applicable; or

       (3)     Prior to the policy period and on or after the Retroactive Date, if any, shown in the Schedule of this endorsement, but only if:

          (a)     On or before the effective date of the first Law Enforcement Liability coverage issued by us and continuously renewed and maintained by the insured, the insured:
              (i)     Did not give notice to any prior insurer of such "wrongful act"; and
              (ii)    Had no knowledge of such "wrongful act" likely to give rise to a "claim" hereunder; and

          (b)     A "claim" is first made against any insured during the policy period or Extended Reporting Period, if applicable. (Ex. 2, ASH_0108; Ex. 3, ASH_0210.)

\*\*\*

28.     The Excess Policies provide coverage, in relevant part, for "ultimate net loss" in excess of the "retained limit."  The Excess Policies' insuring agreement provides:

> **a.**     We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which insurance provided under this Coverage Part applies. (Ex. 4, ASH_0234, ASH_0274.)

\*\*\*

**COUNT I**
**DECLARATORY RELIEF**
**The Primary Policies' General Liability Coverage Does Not Apply**

29.     American Southern Home incorporates paragraphs 1-28 as though fully restated herein.

30.     The Primary Policies' General Liability coverage applies to damages because of "bodily injury" only if the "bodily injury" occurs during the policy period. (Ex. 2, ASH_0025; Ex. 3, ASH_0129.)

31.     The policy period of the 21-22 Primary Policy is February 20, 2021 to February 20, 2022. (Ex. 2, ASH_0016.)

32.     The policy period of the 22-23 Primary Policy is February 20, 2022 to February 20, 2023. (Ex. 3, ASH_0125.)

33.     The "bodily injury" alleged in the Underlying Lawsuit took place on July 27, 2021, during the policy period of the 21-22 Primary Policy.

34.     The "bodily injury" therefore did not occur during the policy period of the 22-23 Primary Policy as required by the General Liability coverage.

35.     The Primary Policies' General Liability coverage is subject to the Law Enforcement Activity exclusion that provides:

2.      Exclusions Applicable to Coverage A

This insurance does not apply to:

\*\*\*

p.      Law Enforcement Activity

Damages arising out of any "law enforcement activity".

\*\*\*

(Ex. 2, ASH_0030; Ex. 3, ASH_0132.)

2.      Exclusions Applicable to Coverage B

This insurance does not apply to:

\*\*\*

l.      Law Enforcement Activity

Damages arising out of any "law enforcement activity".

\*\*\*

(Ex. 2, ASH_0036; Ex. 3, ASH_0138.)

36.     The Primary Policies' General Liability coverage includes the following applicable

definition:

\*\*\*

**15.**     "Law enforcement activity" means the activities of any insured while acting
as a law enforcement official, officer, auxiliary officer, "employee", or
"volunteer worker" of the law enforcement agency or department of the
Named Insured. "Law enforcement activity" also includes the activities of
an armed school security "employee" or "volunteer worker" while
performed on behalf of the insured.

\*\*\*

(Ex. 2, ASH_0048; Ex. 3, ASH_0150.)

37.     The Underlying Lawsuit alleges Morrison was a police officer employed by the

College. Morrison was allegedly dispatched to Whitmer's residence on behalf of the City of

Nelsonville due to an emergency call of raised voices.  Upon arriving at the scene, Morrison and

other officers ordered Whitmer to exit his vehicle. Whitmer refused and made several attempts to back his vehicle away from the officers. Morrison subsequently fired his firearm into Whitmer's vehicle fatally striking him.

38. Accordingly, Whitmer's death arose from "law enforcement activity" as defined in the General Liability coverage. Therefore, the Law Enforcement Activities exclusion precludes General Liability coverage for the Underlying Lawsuit.

WHEREFORE, American Southern Home prays that the Court enter judgment in its favor:

a. Declaring that American Southern Home has no duty to defend Morrison under the General Liability coverage in the 21-22 Primary Policy or the 22-23 Primary Policy in the Underlying Lawsuit;

b. Declaring that American Southern Home has no duty to indemnify Morrison or the College under the 21-22 or 22-23 Primary Policy for any settlement or judgment resulting from the Underlying Lawsuit;

c. Awarding American Southern Home such other and further relief that the Court deems just and proper.

## COUNT II
### DECLARATORY RELIEF
**The 21-22 Primary Policy's Law Enforcement Coverage Does Not Apply**

39. American Southern Home incorporates paragraphs 1-28 as though fully restated herein.

40. The Law Enforcement coverage in the 21-22 Primary Policy applies only if the "claim" is first made during the policy period.

41. The 21-22 Primary Policy defines "claim" to mean:

a. A written demand for "damages";

   b.  A formal administrative or regulatory proceeding established under federal, state or local laws and commenced by the filing of a notice of charges, formal investigative order or similar document; or

   c.  A written demand for injunctive or other non-monetary relief, but only with respect to Non-Monetary Relief Coverage and only if a limit is shown in the Non-Monetary Relief Coverage section of the Schedule of this endorsement.

***

(Ex. 2, ASH_0116.)

42. The first "claim" made against Morrison or the College was the Underlying Lawsuit that was filed on July 14, 2022.

43. The policy period of the 21-22 Primary Policy was February 20, 2021 to February 20, 2022. (Ex. 2, ASH_0016.)

44. The "claim" was not first made against Morrison or the College during the 21-22 policy period. Therefore, the Law Enforcement coverage in the 21-22 Primary Policy does not apply to the Underlying Lawsuit.

WHEREFORE, American Southern Home prays that the Court enter judgment in its favor:

a. Declaring that American Southern Home has no duty under the Law Enforcement coverage in the 21-22 Primary Policy to defend Morrison in the Underlying Lawsuit;

b. Declaring that American Southern Home has no duty under the Law Enforcement coverage in the 21-22 Primary Policy to indemnify Morrison or the College for any settlement or judgment resulting from the Underlying Lawsuit; and

c. Awarding American Southern Home such other and further relief that the Court deems just and proper.

**COUNT III**
**DECLARATORY RELIEF**
**Morrison is Not an Insured under the Primary Policies' Law Enforcement Coverage**
**Because He Was Not Providing Law Enforcement For the College**

45.     American Southern Home incorporates paragraphs 1-28 as though fully restated herein.

46.     The Law Enforcement coverage in the Primary Policies defines insured to include the following:

**SECTION II – WHO IS AN INSURED**

**1.**     You, the "educational organization", are an insured.

**2.**     Each of the following is also an insured, but only for acts within the scope of their duties as such for the "educational organization":

\*\*\*

**b.**     Your "employees" and "volunteer workers", but only for acts within the scope of their "law enforcement activities" for you.

\*\*\*

(Ex. 2, ASH_0111-0112; Ex. 3, ASH_0215-0216.)

47.     To qualify as an insured, Morrison must have been performing "law enforcement activities" for "you" (the College).

48.     The term "you" in the Policies refers to the Named Insured in the Declarations and any other organization that qualifies as a Named Insured. The College is the only Named Insured on the Policies.

(Ex. 2, ASH_0111-0112; Ex. 3, ASH_0213-0214.)

49.     Morrison was not providing law enforcement for the College. Instead, he was providing law enforcement for the City of Nelsonville. He had responded to an off-campus emergency within the City that involved persons unaffiliated with the College.

50.     Morrison, therefore, is not an insured under the Law Enforcement coverage because he was providing law enforcement for the College.

WHEREFORE, American Southern Home prays that the Court enter judgment in its favor:

a.      Declaring that American Southern Home has no duty to defend Morrison under the Law Enforcement coverage in the 21-22 Primary Policy or the 22-23 Primary Policy in the Underlying Lawsuit;

b.      Declaring that American Southern Home has no duty under the Law Enforcement coverage in the 21-22 Primary Policy or 22-23 Primary Policy to indemnify Morrison or the College for any settlement or judgment resulting from the Underlying Lawsuit;

c.      Awarding American Southern Home such other and further relief that the Court deems just and proper.

## COUNT IV
## DECLARATORY RELIEF
**The Underlying Lawsuit Does Not Allege a "Wrongful Act" as defined by the Primary Policies' Law Enforcement Coverage**

51.     American Southern Home incorporates paragraphs 1-28 as though fully restated herein.

52.     The Law Enforcement coverage in the Primary Policies applies only to "injuries" arising out of "wrongful acts."

53.     As defined in the Law Enforcement coverage, "wrongful act" means, in relevant part:

a.      Actual or alleged act, breach of duty, neglect, error, omission, misstatement or misleading statement committed by an insured, or any person for whom the insured is legally liable, while in the course of performing "law enforcement activities" for the "educational organization";

\*\*\*

"Educational organization" means the educational entity shown as Named Insured in the Declarations, as legally constituted at the beginning of the policy period.

\*\*\*

"Law enforcement activities" means activities, services, advice or instruction that are within the scope of the authorized security duties of the "educational organization's" "law enforcement or security guard personnel" or "authorized personnel."

\*\*\*

"Authorized personnel" means any person specifically shown by Name or who holds the Title Or Position shown in the Schedule of this endorsement, whose duties are not solely devoted to providing security for the "educational organization".

\*\*\*

"Law enforcement or security guard personnel" means any person who is hired or retained for the sole purpose of providing security services.

\*\*\*

(Ex. 2, ASH_0116-0117; Ex. 3, ASH_0218-0219)

54.     Conduct qualifies as a covered "wrongful act" only if it was in the course of performing "law enforcement activities" for the "educational organization." Hocking College is the referred to "educational organization."

55.     As explained in Count II, and incorporated herein, Morrison was not providing law enforcement for Hocking College. Instead, he was providing law enforcement for the City of Nelsonville when he responded to the off-campus emergency that involved persons unaffiliated with the College.

56.     Thus, Morrison's conduct does not qualify as a "wrongful act," because he was not in the course of performing "law enforcement activities" for the College.

57.     Because the "injuries" did not arise from a "wrongful act," the Law Enforcement coverage does not cover the Underlying Lawsuit.

WHEREFORE, American Southern Home prays that the Court enter judgment in its favor:

      a.      Declaring that American Southern Home has no duty to defend Morrison under the Law Enforcement coverage in the 21-22 Primary Policy or the 22-23 Primary Policy in the Underlying Lawsuit;

      b.      Declaring that American Southern Home has no duty under the Law Enforcement coverage in the 21-22 Primary Policy or 22-23 Primary Policy to indemnify Morrison or the College for any settlement or judgment resulting from the Underlying Lawsuit;

      c.      Awarding American Southern Home such other and further relief that the Court deems just and proper.

**COUNT V**
**DECLARATORY RELIEF**
**In the Alternative, the Contractual Liability Exclusion Precludes the**
**Lawsuit Enforcement Coverage in the Primary Policies**

58.      American Southern Home incorporates paragraphs 1-28 as though fully restated herein.

59.      The Law Enforcement coverage in the Primary Policies is subject to the following exclusion:

***

This insurance does not apply to any "claim" or "suit", regardless of the cause of action or legal theory alleged, that is based upon, attributable to, related to, or arising out of:

***

**b.**    **Contractual Liability**

    **(1)**    Any breach of contract; or

    **(2)**    Liability assumed by the insured under any contract or agreement. This exclusion does not apply to liability the insured would have in the absence of the contract or agreement.

***

(Ex. 2, ASH_0109; Ex. 3, ASH_0211.)

60.     Morrison responded to this emergency on behalf of the City of Nelsonville pursuant to the Mutual Aid agreement.

61.     Any liability the College faces for the injuries alleged in the Underlying Lawsuit was assumed in a contract.

62.     Accordingly, the Contractual Liability exclusion precludes the Law Enforcement coverage in the Primary Policies for any liability the College has for the "injuries" alleged in the Underlying Lawsuit.

WHEREFORE, American Southern Home prays that the Court enter judgment in its favor:

a.     Declaring that American Southern Home has no duty to defend Morrison under the Law Enforcement coverage in the 21-22 Primary Policy or the 22-23 Primary Policy in the Underlying Lawsuit;

b.     Declaring that American Southern Home has no duty under the Law Enforcement coverage in the 21-22 Primary Policy or 22-23 Primary Policy to indemnify the College for any settlement or judgment resulting from the Underlying Lawsuit;

c.     Awarding American Southern Home such other and further relief that the Court deems just and proper.

**COUNT VI**
**DECLARATORY RELIEF**
**In the Alternative, the Criminal Acts Exclusion Precludes the Law Enforcement Coverage in the Primary Policies**

63.     American Southern Home incorporates paragraphs 1-28 as though fully restated herein.

64.     The Law Enforcement coverage in the Primary Policies is subject to the following exclusion:

***

This insurance does not apply to any "claim" or "suit", regardless of the cause of action or legal theory alleged, that is based upon, attributable to, related to, or arising out of:

***

**c.    Criminal Acts**

Any actual or alleged commission of, participation in, or consenting to, a "wrongful act" that is criminal, fraudulent or malicious by an insured.

This exclusion does not affect our duty to defend an insured, in accordance with Paragraph A.1. above, prior to determining, through the appropriate legal processes, that such insured is responsible for a criminal, fraudulent or malicious act.

***

(Ex. 2, ASH_0109; Ex. 3, ASH_0211.)

65.    On information and belief, Morrison entered a plea of no-contest to criminal negligent homicide in violation of O.R.C. § 2903.05.

66.    Because Whitmer's death arose from Morrison's criminal conduct, this exclusion precludes Law Enforcement coverage under the Primary Policies for the Underlying Lawsuit.

WHEREFORE, American Southern Home prays that the Court enter judgment in its favor:

a.    Declaring that American Southern Home has no duty to defend Morrison under the Law Enforcement coverage in the 21-22 Primary Policy or the 22-23 Primary Policy in the Underlying Lawsuit;

b.    Declaring that American Southern Home has no duty under the Law Enforcement coverage in the 21-22 Primary Policy or 22-23 Primary Policy to indemnify Morrison or the College for any settlement or judgment resulting from the Underlying Lawsuit;

c.    Awarding American Southern Home such other and further relief that the Court deems just and proper.

## Count VII
## DECLARATORY RELIEF
### The College's Indemnity Obligation Is Not Covered

67.     American Southern Home incorporates paragraphs 1-66 as though fully restated herein.

68.     The College contends it may be required to defend and indemnify Morrison for the Underlying Lawsuit pursuant to R.C. 3345.041(B) and R.C. §2744.07.

69.     For the reasons set forth in paragraphs 1-66, Southern Home does not cover any contractual or statutory obligation the College has to defend or indemnify Morrison in the Underlying Lawsuit.

70.     The College's obligations to defend and indemnify Morrison also do not qualify as damages under the General Liability coverage or as defined by the Law Enforcement coverage.

71.     The Law Enforcement coverage in the Primary Policies defines "damages" as follows:

> "Damages" means monetary damages, judgments (including prejudgment interest awarded against the insured on that part of any judgment paid by us), or settlements. "Damages" does not include:

> ***

> b.     "Defense expenses" or "legal fees":

(Ex. 2, ASH_0116; Ex. 3, ASH_0218.)

***

72.     The College's indemnity obligations do not qualify as monetary damages, judgments, or settlements because the indemnity obligation is owed to Morrison, not the Estate.

73.     Additionally, the costs related to defend Morrison do not qualify as damages under the General Liability coverage or as defined by the Law Enforcement coverage.

WHEREFORE, American Southern Home prays that the Court enter judgment in its favor:

a.      Declaring that American Southern Home has no duty under the General Liability coverage or the Law Enforcement coverage in the 21-22 Primary Policy or 22-23 Primary Policy to cover any obligation the College has to defend or indemnify Morrison; and

b.      Awarding American Southern Home such other and further relief that the Court deems just and proper.

### COUNT VIII
### DECLARATORY RELIEF
### In the Alternative, Punitive Damages are not Covered

74.      American Southern Home incorporates paragraphs 1-28 as though fully restated herein.

75.      The Law Enforcement coverage in the Primary Policies defines "damages" as follows:

> "Damages" means monetary damages, judgments (including prejudgment interest awarded against the insured on that part of any judgment paid by us), or settlements. "Damages" does not include:

> \*\*\*

> d.      Punitive or exemplary damages;

> \*\*\*

> g.      Matters deemed uninsurable according to the law under which this policy is construed.

> \*\*\*

(Ex. 2, ASH_0116; Ex. 3, ASH_0218.)

76.      The Underlying Lawsuit seeks punitive damages, which do not qualify as "damages" as defined by the Law Enforcement coverage.

77.     Punitive damages also are not covered to the extent they are uninsurable pursuant to law.

78.     Additionally, the Excess Policies include a punitive damages exclusion endorsement that provides:

> This insurance does not apply to any punitive damages, exemplary damages or the multiplied portion of any award, because of any "injury or damage". (Ex. 4, ASH_0258; ASH_0298.)

79.     Any punitive damages awarded against Morrison are excluded under the Excess Policies.

WHEREFORE, American Southern Home prays that the Court enter judgment in its favor:

a.     Declaring that American Southern Home has no duty to indemnify Morrison or the College under the Primary or Excess Policies against any award of punitive damages entered in the Underlying Lawsuit;

b.     Awarding American Southern Home such other and further relief that the Court deems just and proper.

## COUNT IX
## DECLARATORY RELIEF
### The Excess Policies Do Not Cover the Underlying Lawsuit

80.     American Southern Home incorporates paragraphs 1-79 as though fully restated herein.

81.     In relevant part, coverage under the Excess Policies follows the same terms as the Primary Policies. The Excess Policies provide:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance. The word "insured" means any person or organization qualifying as such under the "controlling underlying insurance".

\*\*\*

The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance", unless otherwise directed by this insurance.

\*\*\*

(Ex. 4, ASH_0234, ASH_0274.)

82.     The Excess Policies further provide:

The definitions applicable to any "controlling underlying insurance" also apply to this insurance. In addition, the following definitions apply:

**1.**     "Controlling underlying insurance" means any policy of insurance or self-insurance listed in the Declarations under the Schedule of "controlling underlying insurance".

\*\*\*

(Ex. 4, ASH_0238, ASH_0278.)

83.     The "controlling underlying insurance" listed in the Excess Policies' Declarations are the 21-22 and 22-23 Primary Policies, respectively. (Ex. 4, ASH_0230, ASH_0270.)

84.     Morrison is not an insured on the Excess Policies because he is not an insured on the Primary Policies. The Excess Policies therefore do not cover the Underlying Lawsuit.

85.     The Excess Policies also do not cover the Underlying Lawsuit for the reasons set forth in paragraphs 1-77 because the Excess Policies follow the relevant provisions in the Primary Policies, which also do not cover the Underlying Lawsuit.

WHEREFORE, American Southern Home prays that the Court enter judgment in its favor:

a.     Declaring that American Southern Home has no duty under the 21-22 or 22-23 Excess Policy to defend Morrison in the Underlying Lawsuit;

b.  Declaring that American Southern Home has no duty under the 21-22 or 22-23 Excess Policy to indemnify Morrison or the College for any settlement or judgment resulting from the Underlying Lawsuit;

c.  Awarding American Southern Home such other and further relief that the Court deems just and proper.

Dated: March 7, 2023

Respectfully submitted,
AMERICAN SOUTHERN HOME INSURANCE COMPANY


By:  _s/ Christopher Ryan_____

Christopher Ryan (0084607)
McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
Scripps Center, Suite 1050
312 Walnut Street
Cincinnati, Ohio 45202
Telephone:  (513) 762-7520
Fax:  (513) 762-7521
christopher.ryan@mccormickbarstow.com

Monica Sullivan (pro hac vice forthcoming)
Christopher Nadeau (pro hac vice forthcoming)
Nicolaides Fink Thorpe Michaelides Sullivan LLP
10 S. Wacker Drive, 21st Floor
Chicago, Illinois 60607
(312) 585-1400
msullivan@nicolaidesllp.com
cnadeau@nicolaidesllp.com